**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TIMOTHY BARNES,<br>          *Plaintiff-Appellant*,<br><br>v.<br><br>CHASE HOME FINANCE, LLC, a Delaware corporation; CHASE BANK USA, N.A., a subsidiary of JP Morgan Chase & Co., a Delaware corporation; IBM LENDER BUSINESS PROCESS SERVICES, INC., a Delaware corporation; FEDERAL NATIONAL MORTGAGE ASSOCIATION,<br>          *Defendants-Appellees.* | No. 18-35616<br><br>D.C. No.<br>3:11-cv-00142-PK<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Argued and Submitted July 9, 2019
Seattle, Washington

Filed August 14, 2019

Before:  Paul J. Watford and Eric D. Miller, Circuit Judges,
and Barbara Jacobs Rothstein,* District Judge.

Opinion by Judge Rothstein

---

## SUMMARY**

### Truth in Lending Act

The panel affirmed the district court's grant of summary judgment in favor of the defendants in an action brought under the Truth in Lending Act.

The panel held that, on remand following a prior appeal, the district court properly considered defendants' new argument that plaintiff had no right of rescission under TILA because his loan was a residential mortgage transaction under 15 U.S.C. § 1635(e)(1).  The panel held that the argument was not waived because a defendant need not raise every possible argument in a motion for summary judgment and may make a different argument on remand if a grant of summary judgment in its favor is reversed on appeal.  In addition, neither the law of the case nor the mandate in the prior appeal barred the district court from addressing defendants' new argument.

---

* The Honorable Barbara Jacobs Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel affirmed the district court's conclusion that plaintiff's loan was a residential mortgage transaction to which the right of rescission under TILA does not apply. A residential mortgage transaction is defined as "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Plaintiff previously had quitclaimed his interest in the property at issue to his then-wife, and he obtained the mortgage loan and took title to the property in compliance with a divorce judgment. The panel held that the statutory definition of a residential mortgage transaction includes both an initial acquisition and a reacquisition of a property. Assuming without deciding that plaintiff gained an interest in the property by operation of state law upon the filing of the marital dissolution petition, the panel held that he did not "acquire" this interest for purposes of TILA's residential mortgage transaction provision. The panel rejected plaintiff's arguments that (1) the language used in the loan documents showed that he already owned an interest in the property before he took out the loan, and (2) he took out the mortgage to comply with the divorce judgment, and not to finance his acquisition of the property.

## COUNSEL

Elizabeth S. Weinstein (argued), Yarmuth Wilsdon PLLC, Seattle, Washington, for Plaintiff-Appellant.

Kevin Hisashi Kono (argued) and Kaley L. Fendall, Davis Wright Tremaine LLP, Portland, Oregon; Frederick B. Burnside, Davis Wright Tremaine LLP, Seattle, Washington; for Defendants-Appellees Chase Home Finance LLC and Chase Bank USA N.A.

Lance E. Olsen (argued), McCarthy Holthus LLP, Seattle, Washington; John M. Thomas, McCarthy Holthus LLP, Portland, Oregon, for Defendants-Appellees IBM Lender Business Process Services Inc., and Federal National Mortgage Association.

---

## OPINION

ROTHSTEIN, Senior District Judge:

Timothy Barnes appeals the district court's grant of summary judgment in favor of defendants in his action under the Truth in Lending Act ("TILA"), seeking rescission of a mortgage as well as damages and declaratory and injunctive relief. In a prior appeal, we held that Barnes gave proper, timely notice of rescission under TILA, and we vacated the district court's judgment and remanded for further proceedings. *Barnes v. Chase Home Fin., LLC*, 701 F. App'x 673, 674–75 (9th Cir. 2017) (unpublished memorandum disposition). On remand, the district court granted summary judgment on a different ground, concluding that Barnes had no right of rescission under TILA because his loan was a residential mortgage transaction under 15 U.S.C. § 1635(e)(1).

We conclude that the district court properly considered defendants' new argument on remand and properly granted summary judgment because Barnes obtained the mortgage in order to reacquire a residential property in which his prior ownership interest had been extinguished; thus, the right of rescission did not apply. We therefore affirm the district court's judgment.

## FACTUAL BACKGROUND

Timothy Barnes and his now ex-wife obtained title to the property in question in 1990. In 1997, the wife transferred title to the property to Barnes by quitclaim deed. In 2003, Barnes quitclaimed the property back to his wife. She then encumbered the property with a series of deeds of trust, listing her as the sole borrower.

The couple divorced in 2007. The divorce judgment, dated September 12, 2007, provided for a money judgment of $100,000.00 to be entered in favor of the wife and against Barnes. The divorce judgment further provided as follows:

> **The Family Residence** Husband is awarded the real property located at . . . Greenwood Road . . . free of all right, title and interest of Wife thereto, and subject to the encumbrance of record owing thereon which Husband shall pay, indemnify and hold Wife harmless therefrom. Husband shall immediately refinance the mortgage owing on said property in order to remove Wife's name from said financial obligation. Wife shall cooperate in signing any documents necessary in order to accomplish this purpose. Title to said property shall not transfer until the money judgment provided in paragraph 5.11 is paid in full and Wife shall be required to submit an executed Bargain and Sale Deed to any escrow which Husband establishes for the payment of said judgment.

On November 15, 2007, Barnes obtained the loan at issue, signing a balloon note with defendant Chase Bank

USA, N.A. ("CBUSA") for $378,250.00. On the same date, he executed a deed of trust securing the note on the property. According to a statement of First American Title Insurance Company of Oregon, Barnes used $254,438.92 of the loan funds to pay off his ex-wife's outstanding loan balance, and he paid $100,000.00 to her to satisfy the money judgment provided for in the divorce judgment. The ex-wife conveyed title to the property to Barnes via a Statutory Special Warranty Deed, signed on November 16 and recorded on November 20, 2007. Barnes married his current spouse in September 2008, and they reside on the property.

## PROCEDURAL HISTORY

Barnes, appearing pro se, filed suit against Chase Home Finance, LLC ("CHF"); CBUSA; IBM Lender Business Process Services, Inc. ("LBPS"); and Federal National Mortgage Association ("Fannie Mae"), seeking rescission of the November 2007 mortgage loan and other relief. The district court dismissed Barnes's claim for rescission as time-barred, and it granted summary judgment on his claims for declaratory and injunctive relief and damages. We vacated the district court's judgment and remanded, holding that Barnes's letter to CHF, a loan servicer, gave proper, timely notice of rescission to his creditor, CBUSA, within three years of the loan transaction under 15 U.S.C. § 1635(a) and (f).

On remand, the district court granted summary judgment in favor of defendants, holding that Barnes had no statutory right under TILA to rescind the 2007 mortgage, and no statutory right of disclosure of any such right of rescission, because the loan was secured by Barnes's residence and thus was a residential mortgage transaction. The district court concluded that, although Barnes had a partial interest in the property from 1990 to 1997 and was the sole owner from

1997 to 2003, his interest in the property was fully extinguished in 2003 when he conveyed the entirety of his interest to his wife via quitclaim deed. The district court further found that, "pursuant to his obligations under the 2007 Dissolution of Marriage, Barnes entered into the 2007 Balloon Note loan transaction specifically in order to acquire ownership interest in the property (for the second time)." "The 2007 Balloon Note was secured by the property . . . , and the property was thereafter Barnes' place of residence . . . . The necessary implication is that the 2007 Balloon Note was a residential mortgage transaction as to which TILA provides no statutory right of rescission." The district court held that, under the plain language of 15 U.S.C. § 1602(x), in which the word "construction," but not the word "acquisition," is modified by the term "initial," Barnes's prior ownership interest in the property did not preclude characterization of the 2007 loan as a residential mortgage transaction. The district court concluded that the Official Staff Interpretations to Regulation Z, 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)–(5)(i) & (ii), was not to the contrary because it applied only to a situation in which a borrower increases an existing ownership interest using loan proceeds. *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)–(5)(i) (the term residential mortgage transaction "does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title"). The district court rejected Barnes's arguments that, pursuant to the September 2007 divorce judgment, he enjoyed some degree of interest in the property prior to entering into the 2007 Balloon Note; that the 2007 Balloon Note was not a residential mortgage transaction because the loan documents refer to the transaction as a refinancing and refer to Barnes as the titleholder of the property; and that the

Chase defendants were estopped from denying that he enjoyed a statutory right of rescission because they provided him with notice of his right to rescind.

## DISCUSSION

### Standard of Review

"We review the grant of summary judgment de novo, viewing the evidence and drawing all reasonable inferences in the light most favorable to the non-moving party." *Edwards v. Wells Fargo & Co.*, 606 F.3d 555, 557 (9th Cir. 2010). "Summary judgment is proper if the pleadings and other evidence before the court 'show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56).

### Scope of District Court's Authority on Remand

Barnes argues that the issue whether his loan was a residential mortgage transaction, to which the right of rescission did not apply, was not properly before the district court on remand because defendants waived the issue by failing to raise it until after the prior appeal, and because defendants' argument was barred by law of the case and this court's mandate in the prior appeal. We disagree. The issue was not waived as a defendant need not raise every possible argument in a motion for summary judgment and may make a different argument on remand if a grant of summary judgment in its favor is reversed on appeal. *See* Fed. R. Civ. P. 56(a) (providing that a party may move for partial summary judgment); *Biel v. St. James Sch.*, 911 F.3d 603, 611 n.6 (9th Cir. 2019) (reversing grant of summary judgment to defendant on the basis of the ministerial exception to employment laws, including the Americans

with Disabilities Act, and noting that, on remand, defendant could make a different argument).

Further, neither law of the case nor the mandate on appeal barred the district court from addressing defendants' residential mortgage transaction argument. *See Rocky Mtn. Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019) (law of the case doctrine); *Edgerly v. City & Cty. of S.F.*, 713 F.3d 976, 985 (9th Cir. 2013) (rule of mandate). In Barnes's prior appeal, we held that Barnes's letter to CHF provided sufficient notice to CBUSA that he was exercising his right to rescind, and the district court therefore erred in dismissing Barnes's claims for rescission and failure to effect rescission on the ground of improper notice. *Barnes*, 701 F. App'x at 674–75. In so holding, we did not rule that Barnes had an otherwise valid right to rescind. As the district court concluded on remand, it was not law of the case, under our decision in the prior appeal, that the remedy of rescission necessarily remained available to Barnes as a matter of law, and we "neither expressly nor impliedly found that Barnes had a right of rescission to exercise in the first instance." Rather, both the district court's prior analysis and this court's analysis "were premised on the assumption that Barnes enjoyed such a right of rescission, and it remain[ed] an open legal question whether that assumption was accurate under the applicable circumstances."

## Grant of Summary Judgment

The parties agree TILA provides that the right of rescission does not apply to a "residential mortgage transaction." 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *see Merritt v. Countrywide Fin. Corp.*, 759 F.3d 1023, 1029 n.7 (9th Cir. 2014); *see also Dunn v. Bank of Am., N.A.*, 844 F.3d 1002, 1005 (8th Cir. 2017) (applying § 1635(e)(1)). What the parties dispute is whether

Barnes's mortgage transaction is a residential mortgage as to which there is no right of rescission, or whether Barnes had a prior interest in the property that made the transaction a refinance as to which a right of rescission was available. A "residential mortgage transaction" is defined as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x).

**A. The District Court Properly Construed the Statutory and Regulatory Text to Include in the Definition of a Residential Mortgage Transaction a Transaction in Which a Consumer Reacquires a Property.**

The district court did not improperly construe TILA's right of rescission against Barnes in ruling that § 1602(x)'s definition of a residential mortgage transaction includes both an initial acquisition and a reacquisition of a property. As the district court concluded, the statutory and regulatory text is unambiguous. *See Comcast of Sacramento I, LLC v. Sacramento Metro. Cable Television Comm'n*, 923 F.3d 1163, 1171 (9th Cir. 2019) (inquiry into meaning of unambiguous statutory text is limited to the text itself). In § 1602(x), the word "initial" modifies only the word "construction." 15 U.S.C. § 1602(x) (defining residential mortgage transaction as transaction in which mortgage is created "to finance the acquisition or initial construction of such dwelling"). Thus, under the plain language of the statute, a residential mortgage transaction is one in which the mortgage is created to finance either (1) the initial construction of the dwelling or (2) any acquisition or

reacquisition of the dwelling. *See In re Bestrom*, 114 F.3d 741, 744–46 (8th Cir. 1997) (holding that TILA right of rescission did not apply where purchaser reacquired property after foreclosure sale).

The district court also correctly concluded that the language of the Official Staff Interpretations to Regulation Z—providing that a residential mortgage transaction does not include a transaction where a borrower had previously acquired an interest in a property—unambiguously refers to a situation in which the borrower increases an existing ownership interest using loan proceeds, rather than a situation in which the borrower reacquires a property in which he had given up all ownership interest. 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)–(5)(i) (the term residential mortgage transaction "does not include a transaction involving a consumer's principal dwelling if the consumer had previously purchased and acquired some interest to the dwelling, even though the consumer had not acquired full legal title"). As the district court reasoned, the examples provided in the Official Staff Interpretation support this interpretation. *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)–(5)(ii) (there is not a residential mortgage transaction when the borrower finances a balloon payment due under a land sale contract or when an extension of credit is made to a joint owner to buy out another joint owner's interest).

Accordingly, the Official Staff Interpretation does not contradict the conclusion that a borrower who obtains a mortgage to reacquire a residential property in which he has retained no interest is conducting a residential mortgage transaction to which the TILA right of rescission does not apply. The "refinance" ordered by Barnes's divorce judgment was not the kind of mortgage addressed by the

regulation—a loan taken out by someone who already owns the property—rather, it was a "refinance" to pay off Barnes's ex-wife's outstanding mortgage so as to make it possible for him to acquire the property in his own right.

**B. The District Court Correctly Concluded That Barnes Reacquired the Property in 2007 Because Barnes Did Not Previously Purchase and Acquire an Interest in the Property.**

Barnes argues that the 2003 quitclaim deed does not establish his subsequent lack of any ownership interest in the property because, once in divorce court, the property took on communal attributes. While Oregon is a separate property state in which "a spouse may hold property solely in his or her own name," *Nay v. Dep't of Human Servs.*, 385 P.3d 1001, 1011 (Or. 2016) (citing Or. Const., Art. XV, § 5), Barnes contends that in an Oregon marital dissolution proceeding, marital assets are defined as property obtained during the marriage by either spouse, and "there is a rebuttable presumption that both parties contributed equally to the acquisition of those assets," *id.* at 1012 (citing Or. Rev. Stat. § 107.105(1)(f)). Oregon law further provides as follows: "Subsequent to the filing of a petition for . . . dissolution of marriage . . . , the rights of the parties in the marital assets shall be considered a species of co-ownership, and a transfer of marital assets under a judgment of dissolution of marriage . . . shall be considered a partitioning of jointly owned property." Or. Rev. Stat. § 107.105(1)(f)(E); *see Matter of Marriage of Johnson*, 380 P.3d 983, 993 (Or. Ct. App. 2016) (spouses ought to be entitled to approve or disapprove disposition of marital assets held as "a species of co-ownership"). Thus, according to Barnes, upon the filing of the petition for the dissolution of the marriage of Barnes and his ex-wife, at some time prior

to September 2007, Barnes acquired a "species of co-ownership" in the property, a marital asset that he had quitclaimed to his then-wife in 2003.

Assuming without deciding that this is correct, and Barnes gained an interest in the property by operation of Oregon law upon the filing of the marital dissolution petition, we nevertheless conclude that Barnes did not "acquire" this interest for purposes of TILA's "residential mortgage transaction" provision. *See* 15 U.S.C. § 1602(x) (defining residential mortgage transaction as transaction in which mortgage is created "to finance the acquisition or initial construction of such dwelling"). The Official Staff Interpretations recognize that some types of prior interests may change the substance of an acquisition to something more akin to a refinance, but that exception applies only where the prior interest was "previously *purchased* and acquired" before the transaction at issue. 12 C.F.R. Pt. 226, Supp. I, Subpt. A 226.2(a)924)–(5)(i) (emphasis added). Barnes does not dispute that he did not "purchase" any interest that might have arisen by operation of Oregon dissolution proceedings.

Barnes also argues that the language used in the loan documents shows that he already owned an interest in the property before he took out the loan in November 2007. He cites the deed of trust, in which he convenanted that he was "lawfully seised" of the property. He also cites the loan application and closing instructions, in which CBUSA characterized the loan as a "refinance" and referred to Barnes as "Titleholder." As the district court concluded, however, the lender's characterization of the transaction is not determinative; the loan was not a refinance where the borrower changed from the ex-wife to Barnes, and Barnes did not acquire title until November 16, 2007, the day after

he signed the loan.  *See Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (looking to substance over form in classifying a loan for purposes of the Fair Debt Collection Practices Act).  Further, as defendants argue, their provision of a notice of a three-day right of rescission did not create the three-year right of rescission on which Barnes seeks to rely.  *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.3-(3)(a)(1) ("the fact that disclosures are made . . . is not controlling on the question of whether the transaction was exempt").

**C. The District Court Correctly Concluded That Barnes Took out the Mortgage to Finance his Reacquisition of the Property.**

Barnes argues that the purpose of the loan was not to finance his acquisition of the property under § 1602(x), but rather to comply with the divorce judgment, which ordered him to pay $100,000.00 to his ex-wife to pay off her outstanding loan balance of $254,438.92.  But most importantly, by means of these same payments he also obtained title to the property.  Our analysis turns on the objective nature of the transaction, not Barnes's subjective intent in entering into it.  As defendants point out, the divorce judgment awarded Barnes the property conditioned on his payment of the property division judgment and his ex-wife's outstanding loan balance, and he obtained the loan in order to carry out those conditions.  *See* 12 C.F.R. Pt. 226, Supp. I, Subpt. A § 226.2(a)(24)–(6) (addressing multiple-purpose transactions).

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of defendants.

**AFFIRMED.**